IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

CATHERINE RAMIREZ,

     Plaintiff,

v.

LEGACY MANAGEMENT, LLC; MYPLACE COS, LTD. D/B/A MY PLACE HOTELS; THE RIVETT GROUP, L.L.C.

     Defendants.

## COMPLAINT AND JURY DEMAND

Plaintiff, Catherine Ramirez, by and through undersigned counsel, Stinar & Zendejas, PLLC, brings this action against Defendants Legacy Management, LLC; MyPlace COS Ltd. d/b/a My Place Hotels; and The Rivett Group, L.L.C. as follows:

### I. INTRODUCTION

1.    Plaintiff is a former employee for Defendants Legacy Management, LLC (herein "Legacy Management"), MyPlace COS Ltd. d/b/a My Place Hotels (herein "My Place Hotels"), and The Rivett Group, L.L.C. (herein "Rivett Group") (collectively herein referred to as "Defendants").

2.    Plaintiff, after successfully working for Defendants for over two years, was terminated immediately after she took time off to self-isolate after being in close contact with a person who tested positive for COVID-19. This request to self-isolate came in addition to Plaintiff disclosing her need for time off work relating to her medical treatment for a pre-cancerous condition.

3. This action is brought pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*. (hereafter "ADA"), the ADA Amendments Act of 2008, Pub.L. No. 110–325 § 2(b)(1), 122 Stat. 3553–3554 (2008) (hereafter "ADAAA"), as well as the Families First Coronavirus Response Act ("FFCRA") (Pub. L. No. 116-127), the Emergency Paid Sick Leave Act ("EPSLA") (FFCRA, Division E, §§ 5105 to 5111 (Pub. L. No. 116-127)), the Fair Labor Standards Act (hereafter "FLSA") and the Family and Medical Leave Act (hereafter "FMLA"), 29 U.S.C. § 2601, *et seq.*, as interpreted by 29 C.F.R. § 825, *et seq.*, for interference with Plaintiff's rights under the FFCRA/EPSLA/FLSA/FMLA.

4. Plaintiff also invokes this Court's supplemental jurisdiction to bring claims against Defendants under the Colorado Anti-Discrimination Act C.R.S. § 24-34-402 (hereafter "CADA"), which prohibits discrimination on the basis of disability or perceived disability by employers with one or more employees, as well as Colorado state common law and the Colorado Wage Claim Act, C.R.S. § 8-4-101, *et seq*.

## II. JURISDICTION

5. Jurisdiction is proper in the U.S. district court for the District of Colorado pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1332, 42 U.S.C. § 12117, and 29 U.S.C. § 2617(a)(2). Upon information and belief, the district court has original jurisdiction by virtue of the parties being citizens of different states, and the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs. Upon information and belief, the district court has original jurisdiction by virtue of the claims arising under the ADA, ADAAA, FFCRA/EPSLA/FLSA/FMLA. Further, the district court has supplemental jurisdiction over Plaintiffs state law claims pursuant to 28 U.S.C. § 1367.

## III. VENUE

6.      Venue is proper in the district of Colorado pursuant to 28 U.S.C. § 1391(b)(2) as the actions giving rise to this action occurred in the state of Colorado.

## IV. PARTIES

7.      Plaintiff Catherine Ramirez ("Plaintiff") is an individual residing in El Paso County, Colorado.  As of the date of this Complaint, Plaintiff is about 55 years old.

8.      Defendant Legacy Management, LLC ("Legacy Management") is a South Dakota limited liability company that operates a hotel, "My Place Hotel – Colorado Springs, CO" located at 369 Gleneagle Drive in the City of Colorado Springs in the County of El Paso, Colorado ("My Place COS").  Upon belief, at all relevant times Legacy Management employed at least 10 employees at My Place COS.  Upon belief, at all relevant times Legacy Management employed over 200 employees across the United States at more than 60 locations.

9.      Defendant MyPlace COS Ltd. d/b/a My Place Hotels ("My Place Hotels"), is a Colorado limited liability company with its principal place of business located 1603 Lookout Springs Dr, Colorado Springs, CO.

10.     Defendant The Rivett Group, L.L.C. ("Rivett Group") is a South Dakota limited liability company with its principal place of business located at 1910 8th Ave. NE, Aberdeen, SD.  Upon information and belief, Rivett Group provides operational management, bookkeeping, payroll and human resources oversight to Legacy Management and My Place Hotels and employs at least 100 employees across the United States.

11.     Upon information and belief, at all relevant times, Legacy Management hired My Place Hotels to manage and operate My Place COS, including managing and controlling its

3

employees.  However, it is unknown the specific terms and extent of the agreement between Defendants by which My Place Hotels manages and operates My Place COS.

16. Upon information and belief, Defendants were joint employers of Plaintiff and shared or co-determined matters governing the essential terms and conditions of Plaintiff's employment.

13. Upon information and belief, Defendants directed, controlled, or maintained the right to control and supervise the administrative, managerial, and employment duties of Plaintiff.

14. Upon information and belief, Legacy Management, Rivett Group and My Place Hotels held authority, direction, and control over workers, such as Plaintiff, in the operation of My Place COS.

V. EXHAUSTION OF ADMINISTRATIVE REMEDIES

15. On April 21, 2021, the Colorado Civil Rights Division  ("CCRD") mailed, and Plaintiff subsequently received, a "Notice of Right to Sue" for CCRD Charge Nos. E2100009673 (against Legacy Management), E2100009674 (against My Place Hotels), and E2100009670 (against Rivett Group) (**Exhibit A**, **Exhibit B**, and **Exhibit** C, respectively) which pleaded actual and/or abetting discrimination and/or retaliation on the basis of disability and/or medical condition (actual or perceived), failure to accommodate, and age discrimination.  This Notice entitles Plaintiff to initiate this action within 90 days of receipt of said notice.

16. Plaintiff has satisfied all private, administrative and judicial prerequisites necessary for this action.

## VI. GENERAL ALLEGATIONS

A. <u>PLAINTIFF BEGINS HER EMPLOYMENT</u>.

17. On March 12, 2018, Plaintiff began working for Defendants as the general manager of My Place COS. Prior to joining Defendants, Plaintiff had approximately 20 years of experience as a hotel manager. This opportunity represented opportunities for growth and a promising career at this particular hotel chain.

18. As of the date of her termination of employment on July 20, 2020, Plaintiff earned $73,000 per year in salary, plus bonus opportunities. Any other fringe benefits or benefits are approximated at 4% of her salary, or about $3,000 per year. As such, Plaintiff earned about $76,000 per year or about $1,462 per week in total compensation.

B. <u>ROLE OF DEFENDANTS IN PLAINTIFF'S EMPLOYMENT.</u>

19. Throughout Plaintiff's employment with Defendants, George Lawson ("Mr. Lawson"), Regional Manager for Legacy Management, Tony Lunzman ("Mr. Lunzman"), Executive Vice President for Legacy Management and Amy Jones ("Ms. Jones"), Director of Human Resources for Rivett Group, held positions of power, control, and authority over Plaintiff in the workplace.

20. Throughout Plaintiff's employment with Defendants, Defendants paid Plaintiff's compensation, as well as directed, controlled, and maintained the right to control and supervise the administrative, managerial, and employment duties of Plaintiff.

21. Throughout Plaintiff's employment with Defendants, Defendants directed, controlled, and maintained the right to control and supervise the administrative, managerial, and employment duties of Plaintiff.

22. Throughout Plaintiff's employment with Defendants, Defendants routinely inquired into and had access to My Place COS' business and financial measurements and set Plaintiff's financial goals by which Plaintiff was measured.

23. Throughout Plaintiff's employment with Defendants, Defendants provided meaningful input into Plaintiff's entitlement to bonuses and other benefits, analysis of her specific and overall performance, and had meaningful input into any decision to promote, retain, or terminate Plaintiff.

24. At all relevant times, Plaintiff followed and executed on Defendants' orders, directions, or instructions.

C. PLAINTIFF'S EMPLOYMENT WITH DEFENDANTS.

25. Throughout her tenure as General Manager, Plaintiff satisfactorily performed her duties.

26. At no time as General Manager did Plaintiff receive any written write up or corrective action by Defendants.

D. DEFENDANTS' WRONGFUL TERMINATION.

27. On July 8, 2020, Plaintiff emailed Defendants to inform them that a person living with her had tested positive for COVID-19. This email included Plaintiff's need to quarantine for up to fourteen (14) days, which was advised by Dr. Bird at Colorado Springs Family Practice.

28. Prior to beginning employment with Defendants, in mid/late 2017, Plaintiff received a potential cancer diagnosis relating to an abnormal cervix ("Medical Issue"). This Medical Issue had been disclosed to Defendants no later than the late winter/spring of 2020.

29. This potential exposure to COVID-19 was concerning given Plaintiff's then age of 54, but especially concerning given her Medical Issue.

30. Shortly after Plaintiff sent her July 8, 2020 email to Defendants advising them of her exposure to COVID-19 and need to quarantine, Mr. Lawson called and yelled at Plaintiff for requesting to take medical leave and began falsely claiming that she did not understand how to perform her job duties. Plaintiff complained to Ms. Jones about Mr. Lawson's harassment concerning his inappropriate behavior and issues, but there was no response and no remedial or corrective action was ever taken.

31. On July 8, 2020, Plaintiff submitted to Defendants a completed and signed "COVID-19 EMERGENCY PAID SICK LEAVE AND EMERGENCY FMLA REQUEST FORM" – which was provided by Defendants - requesting a start date of July 9, 2020.

32. Defendants permitted Plaintiff to take leave related to her COVID-19 symptoms, but it is unclear as to whether Defendants charged Plaintiff's PTO or utilized the paid leave provided under the FFCRA/EPSLA.

33. On July 20, 2020, Plaintiff returned to My Place COS from quarantine only to be immediately terminated by Defendants.

34. Plaintiff was told her termination was due to performance concerns, despite the fact that Plaintiff had never received a warning or notice prior to this termination.

35. At no time before or after her termination did Defendants utilize any progressive discipline procedure to discipline, suspend, or otherwise attempt to correct the alleged performance issues claimed.

36. The same day Plaintiff was terminated, July 20, 2020, Defendants placed an ad for her former position.

37. Upon information and belief, the person who replaced Plaintiff was less qualified and non-disabled, and was hired at a lesser salary than Plaintiff.

38. As a consequence of Defendants' above-mentioned actions, Plaintiff has suffered emotional damages.

39. As a consequence of Defendants' above-mentioned actions, Plaintiff has suffered economic damage as follows: back wages and compensation; loss of economic opportunities and professional growth; loss of benefits either not available on the open market or otherwise prohibitively expensive; and other forms of economic harm.

40. Between July 20, 2020 and May 18, 2021, Plaintiff was unable to find comparable work.

41. On May 18, 2021, Plaintiff began working as the general manager of another hotel, but this time in Castle Rock, and at an annual salary of $62,500, plus insurance which does not become effective until 90 days of employment.

42. Between July 20, 2020 and May 18, 2021 (43.14 weeks), Plaintiff lost $63,075 in salary, as well as statutory interest of approximately $5,000.

43. Between May 18, 2021 and the date of this Complaint, July 8, 2021 (51 days), Plaintiff has lost $1,467 worth of differential income ($10,500/365 = $28.77 per day), and will continue to lose this amount until her insurance kicks in, which will be around August 18, 2021.

44. As a consequence of Defendants' above-mentioned failures, statutory interest has accrued on the sums of money due to Plaintiff but not paid by the Defendants, including unpaid back wages and compensation.

45. As a consequence of Defendants' above-mentioned failures, Plaintiff has been forced to retain counsel and pursue litigation, incurring costs and attorney's fees.

## VII. CLAIMS OF RELIEF

**FIRST CLAIM OF RELIEF**
**ADA/ADAAA 42 U.S.C. § 12112(b)(5)(A) - Disability Discrimination**
**Against All Defendants**

46. Plaintiff incorporates by reference the above-mentioned paragraphs as if fully restated and realleged herein.

47. At all relevant times, Defendants qualified as Plaintiff's employers and Plaintiff qualified as Defendants' employee under the ADA and the ADAAA.

48. At all relevant times, upon information and belief Defendants employed over 300 employees.

49. Defendants violated the ADA and the ADAAA when they, *inter alia,* unlawfully terminated Plaintiff's employment and/or failed to accommodate her actual and/or perceived disability by refusing to allow Plaintiff to seek or take leave to treat her actual and/or perceived disability.

50. At all relevant times, Plaintiff had disabilities, including close contact with a person who tested positive for COVID-19, and the resulting need to quarantine, which constituted an actual or perceived disability or medical condition that substantially limited her in

one or more of her major life activities, including, but not limited to eating, sleeping, thinking and concentrating and working.

51. At all relevant times, Plaintiff had disabilities, including an enlarged/abnormal cervix (a typical precursor for cancer), which constituted an actual or perceived disability or medical condition that substantially limited her in one or more of her major life activities, including, but not limited to eating, sleeping, thinking and concentrating and working.

52. At all relevant times, Plaintiff was a qualified individual with a disability as she satisfied the requisite skill, experience, education and other job-related requirements of the position of general manager and she could perform the essential functions of her position.

53. In July 2020, after being informed of her exposure to COVID-19, Plaintiff reasonably requested time to quarantine. Plaintiff's disabilities constituted physical or mental impairments that substantially limited her in one or more of her major life activities, including working.

54. At all relevant times, a record existed of Plaintiff's impairments, namely the need for time off from work which Plaintiff took in order to appropriately quarantine.

55. Plaintiff was disabled or Defendants perceived or otherwise regarded Plaintiff as being disabled.

56. On July 20, 2020, Defendants terminated Plaintiff's employment the day after she returned from a COVID-19 quarantine.

57. As alleged above, Defendants filled Plaintiff's position of general manager a few months after Plaintiff's termination with a non-disabled worker.

58. Plaintiff provided Defendants with sufficient information that, under the circumstances, they are deemed to have known about Plaintiff's actual and/or perceived disability and her desire for accommodation.

59. The accommodations Plaintiff requested were reasonable.

60. The accommodations Plaintiff requested posed no undue hardship to Defendants.

61. At all relevant times and as alleged above, Defendants acted maliciously and willfully as they knew their conduct was prohibited by the law and/or Defendants showed a reckless disregard for whether their actions were prohibited under the law or not.

62. As a direct and proximate result of Defendants' unlawful termination and/or failure to accommodate Plaintiff's actual and/or perceived disabilities, Plaintiff has suffered and will continue to suffer emotional distress as well as economic losses in an amount to be proven at trial.

63. Wherefore, Plaintiff respectfully requests relief as presented at the conclusion of this pleading.

**SECOND CLAIM FOR RELIEF**
**CADA C.R.S. § 24-34-402(1)(a) - Disability Discrimination**
**Against All Defendants**

64. Plaintiff incorporates by reference the above-mentioned paragraphs as if fully restated and realleged herein.

65. At all relevant times, Defendants, jointly and/or individually, qualified as employers and Plaintiff qualified as Defendants' employee under the CADA.

66. Defendants violated the CADA when they, *inter alia,* unlawfully terminated Plaintiff's employment and/or failed to accommodate her actual and/or perceived disability by refusing to allow Plaintiff to seek or take leave to treat her actual and/or perceived disability.

67. At all relevant times, Plaintiff had disabilities, including close contact with a person who tested positive for COVID-19, and the resulting need to quarantine. Plaintiff's disabilities constituted physical or mental impairments that substantially limited her in one or more of her major life activities, including working.

68. At all relevant times, Plaintiff had disabilities, including an enlarged/abnormal cervix (a typical precursor for cancer), which constituted an actual or perceived disability or medical condition that substantially limited her in one or more of her major life activities, including, but not limited to eating, sleeping, thinking and concentrating and working.

69. At all relevant times, Plaintiff was a qualified individual with a disability as she satisfied the requisite skill, experience, education and other job-related requirements of the position of general manager at My Place COS and she could perform the essential functions of her position.

70. In July 2020, after being informed of her exposure to COVID-19, Plaintiff reasonably requested time to quarantine. Plaintiff's disabilities constituted physical or mental impairments that substantially limited her in one or more of her major life activities, including working.

71. At all relevant times, a record existed of Plaintiff's impairments, namely the need for time off from work which Plaintiff took in order to appropriately quarantine.

72. At all relevant times, Plaintiff was disabled or Defendants perceived or otherwise regarded Plaintiff as being disabled.

73. On July 20, 2020, Defendants terminated Plaintiff's employment immediately after Plaintiff returned from a COVID-19 quarantine.

74. As alleged above, Defendants filled Plaintiff's position of general manager a few months after Plaintiff's termination with a non-disabled worker.

75. Plaintiff provided Defendants with sufficient information that, under the circumstances, they are deemed to have known about Plaintiff's actual and/or perceived disability and her desire for accommodation.

76. The accommodations Plaintiff requested were reasonable.

77. The accommodations Plaintiff requested posed no undue hardship to Defendants.

78. At all relevant times and as alleged above, Defendants acted maliciously and willfully as they knew their conduct was prohibited by the law and/or Defendants showed a reckless disregard for whether their actions were prohibited under the law or not.

79. As a direct and proximate result of Defendants' unlawful termination and/or failure to accommodate Plaintiff's actual and/or perceived disabilities, Plaintiff has suffered and will continue to suffer emotional distress as well as economic losses in an amount to be proven at trial.

80. Wherefore, Plaintiff respectfully requests relief as presented at the conclusion of this pleading.

# THIRD CLAIM FOR RELEIF
**Families First Coronavirus Response Act ("FFCRA") (Pub. L. No. 116-127)**
**Emergency Paid Sick Leave Act ("EPSLA") (FFCRA, Division E, §§ 5105 to 5111 (Pub. L. No. 116-127)**
**Fair Labor Standards Act ("FLSA") (29 U.S.C. § 201 *et seq*)**
**Family Medical Leave Act ("FMLA") (29 U.S.C. § 2601, *et seq*)**
**Discrimination and Retaliation**
**Against All Defendants**

81. Plaintiff incorporates by reference the above-mentioned paragraphs as if fully restated and realleged herein.

82. At all relevant times, Defendants qualified as employers of Plaintiff and Plaintiff qualified as Defendants' employee under the FFCRA and EPSLA.

83. In July 2020, Defendants employed less than 500 employees, and as such Defendants are an "employer" within the meaning of the FFCRA and EPSLA.

84. Under the FFCRA employers may not discriminate or retaliate against employees for exercising or attempting to exercise their right to take leave under the FFCRA.

85. As alleged above, in July 2020, Plaintiff had been advised by a health care provider to quarantine due to concerns related to exposure to COVID-19, and although Plaintiff was permitted to be on leave, it is not clear whether while Plaintiff was on her COVID 19 leave if Defendants paid Plaintiff paid-time-off pursuant to the FFCRA / EPSLA, or consumed Plaintiff's PTO to take her leave.

86. Although Defendants allowed Plaintiff to quarantine, Defendants refused to allow Plaintiff to return to work, as the day she was to return to work from her FFCRA/EPSLA leave, Defendants terminated Plaintiff.

87. Defendants terminated Plaintiff because she exercised rights under the FFCRA and EPSLA, including the right to take leave when advised by a health care provider to self-quarantine.

88. Defendants failed to restore Plaintiff to an equivalent position at the end of her FFCRA/EPSLA-protected leave.

89. Defendant has violated the EPSLA and FFCRA, as well as the Fair Labor Standards Act ("FLSA").

90. Employers in violation of the first two weeks' paid sick time or unlawful termination provisions of the FFCRA / EPSLA are be subject to, *inter alia*, the penalties and enforcement actions described in the FLSA as well as the FMLA.

91. At all relevant times and as alleged above, Defendants either acted maliciously and willfully knowing their conduct was prohibited by law and/or Defendants acted in a manner which demonstrated their reckless disregard for whether their actions were prohibited by the law or not.

92. As the direct and proximate result of Defendants' unlawful actions Plaintiff has suffered and will continue to suffer emotional distress as well as economic losses in an amount to be proved at trial.

93. Wherefore, Plaintiff respectfully requests relief as presented at the conclusion of this pleading.

WHEREFORE, Plaintiff prays for the following relief:

A. Orders and judgments as requested;
B. Nominal damages;
C. Economic and compensatory damages, in an amount to be shown at trial;
D. Consequential damages;
E. Liquidated damages;
F. Punitive or exemplary damages, in an amount to be shown at trial;
G. Statutory penalties for failure to pay wages;
H. Statutory penalties for a willful failure to pay wages;
I. Costs and attorney's fees;
J. Pre- and post-judgment interest at the highest rate allowed by law;
K. All legal or equitable relief; and
L. All other legal or equitable relief to which Plaintiff is entitled and/or the court and/or jury deems just and proper.

**PLAINTIFF REQUESTS A TRIAL BY JURY ON ALL ISSUES TRIABLE TO A JURY.**

Respectfully submitted this 8th day of July 2021.

*s/Christopher G. Wilhelmi*
Christopher G. Wilhelmi
Attorney for Plaintiff
Stinar & Zendejas, PLLC
121 East Vermijo Ave, Suite 200
Colorado Springs, CO 80903
E-mail: chris@coloradolawgroup.com
Telephone: 719-635-4200
Fax: 719-635-2493